UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| SHARON E. HUMMEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. 1:11-cv-1030-WTL-DKL |
| | ) | |
| MICHAEL J. ASTRUE, COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON JUDICIAL REVIEW

Plaintiff Sharon Hummel requests judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB").  The Court rules as follows.

I.  PROCEDURAL HISTORY

Hummel filed her application for DIB on March 14, 2007, alleging disability beginning on December 20, 2006, due to degenerative disc disease, fibromyalgia, and Chiari malformation. Her application was denied initially and upon reconsideration, whereupon she requested and was granted a hearing before an ALJ.  Hummel was represented by counsel at the hearing, which was held on May 3, 2010.  Hummel and a vocational expert testified at the hearing.  Thereafter, on June 16, 2010, the ALJ rendered her decision in which she concluded that Hummel was not disabled as defined by the Social Security Act ("the Act").  The Appeals Council denied Hummel's request for review of the ALJ's decision, and Hummel filed this timely action for judicial review.

II.  EVIDENCE OF RECORD

The specifics of Hummel's medical records are aptly summarized in her brief, and the

Court will not repeat them here, but rather will discuss particular records as relevant in the discussion section below.

### III.  **APPLICABLE STANDARD**

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months."  42 U.S.C. § 423(d)(1)(A).  In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis.  At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors.  20 C.F.R. § 404.1520(b).  At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled.  20 C.F.R. § 404.1520(c).  At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled.  20 C.F.R. § 404.1520(d).  At step four, if the claimant is able to perform her past relevant work, she is not disabled.  20 C.F.R. § 404.1520(f).  At step five, if the claimant can perform any other work in the national economy, she is not disabled.  20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be

2

upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Id.*

## IV.  THE ALJ'S DECISION

The ALJ found at step one that Hummel had not engaged in substantial gainful activity since the alleged onset date of December 20, 2006. At steps two and three, the ALJ concluded that Hummel had the severe impairments of obesity, disorders of the spine, fibromyalgia, and history of sleep apnea, but that those impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Hummel

> has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b). Specifically, the claimant could occasionally climb ramps and stairs; never climb ladders, ropes or scaffolding; occasionally balance, stoop, kneel, crouch, and crawl; needs to stand and stretch; and should be limited to goal directed work rather than production rate.

Record at 17-18. Given this RFC, the ALJ concluded that Hummel was able to perform her past relevant work as an administrative assistant. Therefore, the ALJ determined that Hummel was not disabled as defined by the Act.

3

## V.  DISCUSSION

Hummel argues that the ALJ's decision is erroneous in several respects, each of which is addressed, in turn, below.

### A.  ALJ's Step Two Determination

Hummel takes issue with the fact that the ALJ failed to identify tronchanter bursitis and carpal tunnel syndrome as severe impairments.  The Court agrees with the Commissioner that Seventh Circuit precedent makes it clear that any such error is harmless.  *See Arnett v. Astrue*, 676 F.3d 586 (7th Cir. 2012) (holding that as long as the ALJ finds at least one severe impairment at step two, omission of other severe impairments is harmless because "Step 2 is a threshold issue only").  Also harmless, although certainly curious, is the fact that the ALJ found sleep apnea to be a severe impairment even though Hummel does not make such a claim and it is unclear whether she actually has been diagnosed with sleep apnea.

### B.  ALJ's RFC Determination

Hummel argues that the ALJ's RFC determination is flawed because it mischaracterizes certain evidence of record and fails altogether to address other relevant evidence.  In addressing Hummel's spine disorders, the ALJ noted the following:

> The claimant was sent for an x-ray of her lumbar spine on October 17, 2006, which indicated moderate hypertrophic degenerative disc change at L2-3 and L3-4 and normal vertical body height and alignment.  An x-ray of the cervical spine indicated normal results.  This evidence was assigned great weight because it indicated only moderate results in the lumbar spine and normal results in the cervical spine.[1]  This evidence does not support the degree of limitation suggested by claimant's testimony and appeal applications.

Record at 19 (citations omitted).  As Hummel points out, less than a month after these x-rays were

---

[1]The Court notes that this statement is nonsensical; the content of an x-ray report is not a reason to give that report "great weight."

taken she underwent an MRI of the cervical spine that was unequivocally abnormal.  It is, quite frankly, silly for the ALJ to assign "great weight," or any weight at all, to the fact that Hummel has no abnormalities of the cervical spine that are visible on an x-ray when she clearly has abnormalities of the cervical spine that are visible on an MRI.  She likely also does not suffer from gangrene or blindness, but those observations–like her normal cervical x-ray–are irrelevant to the question of whether she suffers disabling pain as a result of a disorder of her spine.

> With regard to the MRI in question, the ALJ noted the following:

> The claimant was sent for an MRI of the cervical spine on November 15, 2006.
> The test indicated disc protrusions at C5-C6 and C6-C7; mild degenerative changes
> at the cervical and lumbar segments; and found no lumbar protrusions or
> extrusions.  This objective test results [sic] was examined and found notable
> because it indicated only mild results.  This is one of the few objective test results
> found in the file and it does not support the claimant's allegation that she is
> disabled.

*Id.* (citation omitted).  Hummel objects to the ALJ's characterization of the MRI report as indicating "only mild results."  The MRI report does, indeed, refer to many of the abnormalities noted on Hummel's MRI as mild:  "slight spondylosis," at C2-CS and C4-C5; "minimal loss of disc height and mild anterior spondylosis" and "mild central canal stenosis" at C5-C6; "mild impingement of the right C7 nerve root" and "mild central canal stenosis"; "mild disc desiccation and disc bulge" at L3-L4 with "minimal loss of disc height" and "mild anterior spondylosis"; and "mild disc desiccation" with "minimal loss of disc height" and "mild bulge . . . and mild anterior spondylosis" at L2-L3."  *Id.*  at 328-29.  Nonetheless, it is not clear to the Court that the ALJ's characterization of the MRI report as "indicating only mild results" is accurate, because in addition to the "mild" findings the MRI report notes "bilobed central and right paracentral disc protrusion" at C5-C6 that "measures 9mm right-left" and "2mm anterior-posterior," and "central-right disc protrusion" at C6-C7 that "measures 8mm right-left, 3.5mm anterior-posterior."  *Id.* at

328.  The Court has no idea of knowing whether this is "mild" disc protrusion or something more severe; the MRI report does not say.

Unlike the Court and the ALJ, neurosurgeon Ronald Young is qualified to interpret an MRI.  He reviewed Hummel's MRI and arrived at a much different conclusion than the ALJ.  Far from characterizing the MRI as "indicating only mild results,"  Dr. Young described it as "show[ing] disc degeneration and spondylosis along with disc herniations at C5-6 and C6-7 . . . [with] *severe* impingement of the right C7 nerve root and mild to moderate impingement of the C6 nerve root."  *Id.* at 268.  This seems to contradict the MRI report in some respects, but it is also clear that Dr. Young's use of the term "severe impingement" was not a typographical error, inasmuch as he recommended that Hummel undergo major surgery to correct the impingement.  After first trying a right C7 nerve root block to ensure that the pain she was experiencing was, in fact, being caused by the disc herniations, Hummel had the recommended anterior cervical discectomy and fusion surgery in June 2007.

The problem, as Hummel points out, is that the ALJ points to the MRI as objective evidence that contradicts Hummel's claim of disabling pain without acknowledging the fact that Dr. Young, Hummel's treating neurosurgeon, viewed the MRI quite differently.  It is true that the ALJ does not have to address every piece of evidence, but the "mild" findings on the MRI and the perceived lack of any objective evidence of more severe problems are lynchpins of the ALJ's decision, and the Court agrees with Hummel that it was error for the ALJ to ignore entirely Dr. Young's opinion regarding the MRI.  Remand is therefore required to remedy this error.

Hummel also correctly points out that the ALJ reviewed the report from Dr. Young's December 2006 examination and found it "noteworthy because the objective signs and findings did not support the degree of limitation claimed in this appeal," *id.* at 19, without acknowledging

that Dr. Young found bilateral depression of her bicep reflexes and decreased sensation in her right fingers, opined that she had severe nerve root impingement, and recommended major surgery.  Nothing in Dr. Young's report suggests that he found Hummel's complaints of pain and numbness to be inconsistent with either his own exam or the MRI.  It is unclear why the ALJ believed it to be so.  This, too, should be addressed on remand.

### C. Credibility Determination

Hummel next takes issue with the ALJ's credibility determination.[2]  "In determining credibility an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 404.1529(c); S.S.R. 96-7p, and justify the finding with specific reasons.  *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).  "Furthermore, the ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it."  *Id.* (citations omitted).

In this case the ALJ seemed to put great emphasis on the "inconsistencies" she perceived between the objective evidence and the degree of symptoms claimed by Hummel and her finding "there is no acceptable objective documentation in the file that supports the claimant's allegation

---

[2]As is so often the case, the ALJ's credibility discussion begins with the finding that "the claimant's statements concerning the intensity, persistence, and limiting effects" of his symptoms were "not credible to the extent they are inconsistent with" the judge's assessment of his residual functional capacity.  The Seventh Circuit recently has criticized this language as "meaningless boilerplate seen frequently in decisions from ALJs," has "criticized this template as unhelpful," and has "explained that it backwardly 'implies that the ability to work is determined first and is then used to determine the claimant's credibility.'"  *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) and citing *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010)).  "Credibility findings must have support in the record, and hackneyed language seen universally in ALJ decisions adds nothing."  *Shauger*, 675 F.3d at 694 (citing *Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir.2011) and *Parker*, 597 F.3d at 921-22).

of disability," but, as discussed above, the ALJ's analysis of the objective evidence is

questionable.  Also questionable is the ALJ's suggestion that Hummel alleged she had a

"debilitating" sleep disorder and yet failed to pursue treatment for it; the Court is unaware of any

such suggestion by Hummel.  In addition, the ALJ states that "[t]here is nothing in the file that

indicates that the claimant is more limited than is provided by the supplied residual functional

capacity" and "[t]he record is silent as to any permanent work or activity restrictions or limitations

that were placed upon the claimant while she was being treated or examined."  Record at 24.

These comments are troubling; first, the Act does not require "permanent" work restrictions and,

as discussed below, the record does contain opinions from treating physicians that she is restricted

in her ability to work.  The ALJ shall reexamine her credibility determination on remand.

### D.  Treatment of Opinions of Physicians

Hummel argues that the ALJ failed to comply with the "treating physician rule," pursuant

to which

> [a] treating physician's opinion that is consistent with the record is generally
> entitled to "controlling weight." 20 C.F.R. § 404.1527(d)(2); *Schaaf v. Astrue*, 602
> F.3d 869, 875 (7th Cir. 2010).  An ALJ who chooses to reject a treating physician's
> opinion must provide a sound explanation for the rejection. 20 C.F.R. §
> 404.1527(d)(2); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Schmidt v.
> Astrue*, 496 F.3d 833, 842 (7th Cir.2007).

*Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).  "'If an ALJ does not give a treating

physician's opinion controlling weight, the regulations require the ALJ to consider the length,

nature, and extent of the treatment relationship, frequency of examination, the physician's

specialty, the types of tests performed, and the consistency and supportability of the physician's

opinion."  *Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir. 2011) (quoting *Moss v. Astrue*, 555 F.3d

556, 561 (7th Cir.2009) (citing 20 C.F.R. § 404.1527(d)(2)).

8

The record contains several opinions from Hummel's treating physicians regarding her condition.  First, on December 26, 2006, Hummel's pain specialist, Dr. Arbuck, completed a form related to her claim for disability insurance.  The ALJ comments on Dr. Arbuck's opinion as follows:

> On December 26, 2006, a treating physician completed an insurance form and indicated that the claimant had moderate limitations of functional capacity and was capable of sedentary activity.  The form indicated the claimant became unable to work on December 13, 2006, and could return to work on January 23, 2007.  The undersigned has assessed this evidence and found it notable that a treating physician opined that she could return to work on January 23, 2007.

Record at 19.  Dr. Arbuck actually *anticipated* that Hummel would be improved enough by January 23, 2007, to return to work, while the ALJ's comment suggests that Dr. Arbuck assessed her condition on January 23rd and opined at that time that she was capable of returning to work.  In fact, Dr. Arbuck's records indicate that in June 2007 he opined that Hummel needed to "be off work for another month."  Therefore, the ALJ's suggestion that as far as Dr. Arbuck was concerned Hummel could work as of January 23, 2007, is deceiving.

Similarly, treating physician Dr. Tripple completed a disability insurance form in April 2008 on which he stated that Hummel was at the time unable to return to light duty work and "very limited in what she can do because of pain."  The form requested that Dr. Tripple predict Hummel's "anticipated date for returning to full duty work (if any)"; his answer was July 1, 2008.  *Id.* at 597.  On September 29, 2009, Dr. Tripple completed an RFC questionnaire on which he listed Hummel's various limitations and opined that she was unable to work.  The ALJ commented as follows:

> This questionnaire was supplied little weight even though it was completed by the claimant's treating physician.  This same physician had earlier indicated the claimant could return to full time work on July 8, 2008, and is now indicating that she is not capable of any work.  There are no objective signs or findings to support

9

this radical change in opinion.  The undersigned notes that there are no objective
findings to support any of the limitations found in this questionnaire, which tends
to suggest that this form may have been completed in a [sic.] attempt to assist the
claimant in her claim for disability.

*Id.* at 21.  Again, the ALJ equates a prediction by a physician regarding when Hummel might be

improved enough to return to work with a finding that she is capable of returning to work at a

given time.  This time the error is compounded by the fact that the ALJ rejects Dr. Tripple's later

statement about Hummel's limitations because of a contradiction that exists only because of the

ALJ's mischaracterization of his earlier prediction.

In addition to the opinions of her treating physicians, two consultative physicians also

opined regarding Hummel's limitations.  On September 4, 2007, Dr. Nicolai conducted a

consultative examination of Hummel at the request of the state agency.  The physician concluded

that Hummel could "stand/walk for at least 2 hours in an 8 hour day with easy fatigability; she can

use one or both upper extremity for lifting/carrying less than 10 pounds frequently or over 10

pounds occasionally."  *Id.* at 419.  The ALJ summarized the physician's report and concluded:

"This evidence was evaluated and assigned little weight because the objective signs and findings

do not support the indicated conclusion.  The undersigned notes that this conclusion appeared to

be more based upon the claimant's report of symptoms and impairments than based upon her

actual tested functionality."  *Id.* at 20.

On November 30, 2007, Dr. Levine conducted a second consultative examination of

Hummel.  Dr. Levine arrived at the same conclusion as Dr. Nicolai: Hummel could  "stand/walk

for at least 2 hours in an 8 hour day and could use one or both upper extremity for lifting/carrying

less than 10 pounds frequently or over 10 pounds occasionally."  *Id.* at 475.  While the ALJ notes

this conclusion, she does not indicate why she rejects it.  Rather, she states that Dr. Levine's

"examination found mostly benign examination results including normal ambulation and posture; 5/5 strength; mostly full range of motion; and she could perform fine motor tasks.  The signs and findings from this examination provide sound support for the supplied residual functional capacity."  *Id.* at 21.

The ALJ rejected the opinions of Dr. Tripple, Dr. Levine, and Dr. Nicolai without articulating adequate reasons for doing so.  Her repeated insistence that their opinions were not supported by objective evidence is troubling for two reasons.  First, as noted above, "the ALJ may not discredit a claimant;s testimony about her pain and limitations solely because there is no objective medical evidence supporting it."  *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).  Neither may the ALJ reject treating and examining physician's opinions solely on that basis; if three different doctors have examined Hummel and not found the symptoms she described to be inconsistent with the objective findings in the record, the ALJ must provide some basis for making that finding herself.  Second, as discussed at length above, the ALJ's characterization of the objective evidence of record, particularly Hummel's 2006 MRI, is at odds with her treating neurosurgeon's characterization of it.

The only evidence of record that supports the ALJ's RFC determination is the opinion of the non-examining state agency medical consultants.  On remand, the ALJ shall reconsider all of the medical opinions in the record and be certain to provide appropriately supported reasons for the weight given to each, including an explanation of what objective evidence is and is not consistent with each opinion.

## VI.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this Entry.

11

SO ORDERED:   09/04/2012

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification